McQUEEN (CURRANEE v.). See Case No. 3,488.

McQUERRY (MILLER v.). See Case No. 9,583.

## Case No. 8,924.

### Ex parte McQUILLON.

[3 West. Law Month. 440; 9 Pittsb. Leg. J. 27.]

District Court, S. D. New York. Aug. 5, 1861.

HABEAS CORPUS TO MILITARY OFFICER—REFUSAL TO OBEY.

[Where a military officer made return to a writ of habeas corpus that he declined to obey it at the present time, under orders from his superior, which were produced in court, *held*, that the court could take no further action in the matter, and would deny a motion to execute the writ. Following Ex parte Merryman, Case No. 9,487.]

[This was an application for a writ of habeas corpus to procure the release of Purcell McQuillon, who was held in custody by the military authorities of the United States at Fort Lafayette, New York.]

Before BETTS, District Judge.

The judge asked if the matter of the habeas corpus of Purcell McQuillon was ready.

Mr. Edwards called for the return of the writ, which was addressed to the commander of Fort Lafayette, and commanding him to have the body of McQuillan brought before this court. A lieutenant handed Mr. Edwards the return.

Mr. Edwards said the return was merely altered. It read: "Headquarters, Fort Hamilton, New York, July 29, 1861. I beg leave to decline obeying this writ at this time, by authority of Lieutenant General Winfield Scott. Martin Burke, Brevet Lieutenant Col. Commanding, Fort Lafayette, New York."

Mr. Edwards objected to the sufficiency of the return, both as to date and substance.

The judge said the court could not take cognizance of the sufficiency of the order of General Scott until it was before it.

Mr. Woodford inquired if it was doubted that the return was made by the lieutenant colonel commanding at Fort Lafayette.

Mr. Edwards replied in the negative, but he respectfully insisted that it was not a sufficient or proper return.

The judge said it did not appear that such an order or interdiction upon the officer making the return, had been made.

Mr. Edwards remarked that if this was a matter against a civilian, he would ask an attachment to be issued. He would ask the judge, if he did not see fit to issue process against the officer, that the authority for his refusal to obey the writ be made a part of the return. This was merely the old return with three or four words added. The date was not as it should be, and the prisoner should be here.

Mr. Woodford said the lieutenant present had with him the authority under which his superior acted, with instructions to present it to the court. Mr. Woodford did not appear here to advise the form of the return. The military power in its wisdom had chosen to decline obeying this writ, and had furnished instructions to its officers accordingly. This was a matter not within his discretion as the law officer of the government, and he could not advise the making of this authority a part of the return.

Mr. Edwards took the order from the lieutenant and read it. It was as follows: "To Colonel D. D. Tompkins, Quartermaster's Department, No. 6 State Street, N. Y. Headquarters Army, Washington, July 24, 1861. Send orders immediately to commanding of-

ficer of Forts Hamilton and Lafayette to return to writ in case of Purcell McQuillan that he begs leave to decline obeying the writ at this time. (Signed:) Winfield Scott."

A copy of the order sent by Colonel Tompkins, in pursuance of the above authority, was then read.

Mr. Edwards still claimed that the return and orders were insufficient, and the prisoner should be brought here.

The judge said the officer made return that he could not bring the person here, as he was restrained by orders from Gen. Scott. He took it that the military authorities declined to obey the writ as a matter of right, and the civil power was not sufficient to enforce it. The court would not at this time grant any order to have the body brought here.

Mr. Edwards then argued that the return was insufficient in not showing the authority for suspending the writ of habeas corpus.

After argument, BETTS, District Judge, remarked that the question involved was a very grave one. and was similar in all respects to the case recently before Chief Justice Taney, in Baltimore [Ex parte Merryman. Case No. 9,487]. The questions raised in that case had never been solved. He would, however, follow out that case, but would express no opinion whatever, as it would be indecorous on his part to oppose the chief justice. He would therefore decline taking any action on the writ at all. The constitutional law must be upheld, and he would not cavil at the manner in which it was done. The public mind would settle itself into the conviction to let the matter rest as it is, without throwing open the habeas corpus to be used by every one during the progress of the war. The writ had been served, and the commanding officer had declined to produce the person by the authority of his superior officer, who claimed that the writ was not operative against him. The court could therefore not take any action in the matter, and would not direct the marshall to execute the writ. An order could be entered on the minutes stating that a motion had been made to execute the writ, which was denied.